IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TAMMY JARRY,<br><br>        *Plaintiff,*<br><br>v.<br><br>ALLIED CASH ADVANCE VIRGINIA, L.L.C.<br>D/B/A ALLIED CASH ADVANCE<br><br>        *Defendant.* | CIVIL NO. 6:15-CV-00045<br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court on Defendant's motion to dismiss, or in the alternative, to stay the action and compel arbitration. Dkt. 4. Plaintiff Tammy Jarry filed this action against Allied Cash Advance Virginia, LLC ("Allied") for alleged violations of the Truth in Lending Act ("TILA"), Virginia Consumer Finance Act, and Virginia's usury law, seeking to recover statutory damages, the cost of the action, and attorney's fees. Allied asserts that the contract at issue contains a valid arbitration agreement; therefore, this action should proceed to arbitration. Because the arbitration agreement is valid and enforceable, I will grant Defendant's motion and dismiss this action so that it can proceed to arbitration.[1]

  **I.  Factual Background**

  On March 24, 2014, the Plaintiff, Jarry, drove to an Allied Cash Advance located in Lynchburg, Virginia, to obtain a loan. Compl. ¶ 19. Jarry submitted an application, was approved, and signed the Line of Credit Agreement and Plan ("Contract") currently in dispute. *Id.* Jarry borrowed $300 via the contract, but paid an estimated $500 in payments, at an interest

---

[1] Neither party has requested a hearing within the sixty-day time period. *See* W.D. Va. L. Civ. R. 11(b). Therefore, I am deciding this motion on the papers without a hearing. W.D. Va. L. Civ. R. 11(b); Fed. R. Civ. P. 78(b).

rate of 273.75%. *Id.* ¶ 23, 45.

The contract includes an arbitration agreement ("Agreement"),[2] which permits either party to elect arbitration regarding "all claims arising from or relating to this Agreement or any other agreement that you and we have ever entered into." Dkt. 1-3 at 1. The agreement states: "[Y]ou and we agree to arbitrate any Claim if the person or entity against whom a Claim is asserted elects to arbitrate the Claim." Dkt. 1-3 at 1. The term "claim" includes "any claim, dispute, or controversy arising from or relating to this Agreement, this Transaction, any other agreement or transaction that we have ever entered into or completed, or any other conduct or dealing between you and us." Dkt. 1-3 at 4, ¶ 1. Among other provisions, the agreement expressly limits the Plaintiff in that they "may not join or participate in a class action, act as a class representative or a *private attorney general*, or consolidate [their] Claim with the claims of others." *Id.* at 1 (emphasis added). The agreement later reiterates that "[n]either [the Plaintiff] [n]or we may join or participate in a class action, act as a class representative or a private attorney general . . . ." *Id.* at 4, ¶ 2.

## II. Legal Standard

### a. Compelling Arbitration through the Federal Arbitration Act (FAA)

The Federal Arbitration Act ("FAA") establishes a presumption of validity for arbitration agreements, the overarching federal policy regarding arbitration, and the procedural guidelines for litigating arbitration disputes. *See* 9 U.S.C. § 1 *et seq*.

Under the FAA, a written agreement to submit a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has acknowledged

---

[2] The compelling of arbitration is discussed in two areas within the contract: (1) in the beginning and (2) in a separate section entitled "Arbitration Agreement." *See* dkt. 1-3 at 1, 4–5. Therefore, for the purposes of this opinion, the term "agreement" refers to either section with the specific page number denoted accordingly.

the presumptive validity of arbitration agreements and reaffirmed that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (citing *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curium)) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

Moreover, the FAA allows those subject to an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In the event that a suit has already been brought in circumvention of an arbitration agreement, the FAA instructs courts to stay the action for "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

Lastly, as it pertains to the interpretation of an arbitration agreement, the Supreme Court has recognized that the FAA establishes "as a matter of federal law, [that] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### b. Fourth Circuit's *Adkins* Test to Compel Arbitration

The United States Court of Appeals for the Fourth Circuit, in *Adkins v. Labor Ready, Inc.*, delineated a four element test for determining whether a party can compel arbitration under the FAA. 303 F.3d 496, 500-01 (4th Cir. 2002). The test requires: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the

[plaintiff] to arbitrate the dispute." *Id.* (citing *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir.1991)).

### III. Discussion

#### a. The agreement requires this dispute to be resolved in arbitration.

Neither party contents that: (1) a dispute exists between Jarry and Allied; (3) there is a relationship between the loan received by Jarry and interstate commerce; and (4) Jarry is refusing to arbitrate the dispute. Therefore, the only contention of the parties is "whether a written agreement exists that covers the dispute." *Adkins*, 303 F.3d at 500-01.

The Plaintiff argues that the arbitration provision of the contract is unenforceable because it deprives her of the ability to vindicate her rights under the statute. Ultimately, the Plaintiff relies on the language found in the agreement that states: "[y]ou may not join or participate in a class action, act as a class representative or a *private attorney general*, or consolidate [their] Claim with the claims of others." Dkt. 1-3 at 1 (emphasis added); *see also id.* at 4, ¶ 2 ("Neither [the Plaintiff] or we may join or participate in a class action, act as a class representative or a *private attorney general* . . . .") (emphasis added). Using this language, the Plaintiff argues that arbitration would prevent her from seeking attorney fees or any damages under TILA (and the other statutory provisions) because claims pursuant to TILA have been recognized as claims by "private attorney generals."[3] *White v. Arlen Realty & Dev. Corp.,* 540 F.2d 645, 649 (4th Cir. 1975); *see also Williams v. Pub. Fin. Corp.* 598 F.2d 349, 359–60 (5th Cir. 1979). However, this argument is incorrect. *See e.g., Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79,

---

[3] Private attorney general is defined as "[t]he equitable principle that allows the recovery of attorney's fees to a party who brings a lawsuit that benefits a significant number of people, requires private enforcement, and is important to society as a whole." Black's Law Dictionary (10th ed. 2014).

89 (2000) (holding that "federal [TILA] statutory claims can be appropriately resolved through arbitration.").

The arbitration agreement does not concern itself with the limitation of rights or damages that is available to a party, but rather, the form in which this arbitration must occur—*i.e.,* that a party must proceed individually rather than as part of a class. The interpretative principle of *ejusdem generis* proves the point.[4] Black's Law Dictionary defines *ejusdem generis* as "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary (10th ed. 2014); *see also Pitzer v. Martin*, 2007 Va. Cir. LEXIS 261 (Va. Cir. Ct. Dec. 5, 2007) (using the canon for a trust agreement). In this agreement, the term "private attorney general" includes a list of terms such as class action and class representative. Dkt. 1-3 at 4, ¶ 2. Therefore, the term "private attorney general" must be limited to only the prevention of bringing the action as a member of a class rather than individually. *See e.g., Furgason v. McKenzie Check Advance of Ind., Inc.,* 2001 U.S. Dist. LEXIS 2725, at *35 (S.D. Ind. Jan. 3, 2001). "The Court has upheld arbitration agreements that contain waivers providing that arbitration is to proceed on an individual rather than a class action basis, and that impose other procedural requirements on potential claimants." *Hayes v. Delbert Servs. Corp.,* 811 F.3d 666, 675 (4th Cir. 2016) (collecting cases).

While this agreement does not concern itself with the limitation of rights or damages afforded to Jarry, the cases cited by the Plaintiff are illustrative of potential problems not found

---

[4] The canon of *noscitur a sociis* could also be used in this context due to the fact that private attorney general is followed by the phrase: "or consolidate [their] Claim with the claims of others" in the first section of the contract. Dkt. 1-3 at 1. Black's Law Dictionary defines *noscitur a sociis* as "a canon of construction holding that the meaning of an unclear word or phrase, esp. one in a list, should be determined by the words immediately surrounding it." Black's Law Dictionary (10th ed. 2014). Whether the canon of *ejusdem generis* or *noscitur a sociis* is used, the outcome remains the same: the term private attorney general refers to preventing a party from bringing an action as a member of a class rather than individually. *See e.g., Furgason v. McKenzie Check Advance of Ind., Inc.,* 2001 U.S. Dist. LEXIS 2725, at *35 (S.D. Ind. Jan. 3, 2001).

in this arbitration agreement.  First, the Plaintiff cites the recent Fourth Circuit case *Hayes v. Delbert Servs. Corp.* 811 F.3d 666, 675 (4th Cir. 2016).  In *Hayes,* the arbitration agreement provided that it was "subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe" and that "no other state or federal law or regulation shall apply to this Loan Agreement." *Id.* at 669.  The Court found that this agreement rejected "wholesale the application of any federal law to the plaintiffs' federal claims." *Id.* at 673.

The agreement in this case is very different.  This agreement explicitly states that "we agree to arbitrate any claim, if the person or entity against whom a Claim is asserted elects to arbitrat[e] the Claim."  Dkt. 1-3 at 4, ¶2.  Furthermore, "[a] Claim includes any claim arising under the following: a federal or state statute, or legislative enactment; a federal or state administrative regulation or rule . . . ."  Dkt. 1-3 at 4, ¶1.[5]  Therefore, this agreement does not reject the wholesale application of federal and state law as it explicitly allows for such laws to be applied at arbitration.  *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637 (1985) ("so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function").

In addition to *Hayes,* the Plaintiff also cites two cases finding that a prohibition on obtaining attorney's fees as against public policy. *Kristian v. Comcast, Inc.*, 446 F.3d 25 (1st Cir. 2006); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677 (7th Cir. 2002) (en banc).   These cases are likewise distinguishable from the agreement at issue in this case.  In *Kristian* and *McCaskill*, the arbitration agreement expressly precluded the recovery of attorney's fees.  *See Kristian*, 446 F.3d at 50 ("The Company will pay for all reasonable arbitration filing fees and arbitrator's costs and

---

[5] The analysis is the same for the Virginia Consumer Finance Act (Va. Code §6.2-100 *et seq.*) claim and the Virginia usury law (Va. Code §§6.2-304 to -308) claim.  Therefore, arbitration would also allow Jarry to effectively vindicate her rights through these claims.

expenses except that YOU ARE RESPONSIBLE FOR ALL COSTS THAT YOU INCUR IN THE ARBITRATION, INCLUDING, BUT NOT LIMITED TO, YOUR EXPERT WITNESSES OR ATTORNEYS."); *McCaskill,* 298 F.3d at 680 ("Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration."). In this agreement, no such provision exists. In fact, the agreement expressly states that: "[n]o matter what the arbitration firm's procedural rules provide, you and we agree that the arbitrator must issue a written decision and may award any type of remedy – including punitive and equitable relief – that a court or jury could award if the Claim were litigated." Dkt. 1-3 at 4, ¶ 4.

The Plaintiff also argues that the very cost of arbitration itself could preclude the Plaintiff from vindicating her rights. Opp. Br. at 4, n.2 (citing *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90-91 (2000); *Camacho v. Holiday Homes*, 167 F. Supp. 2d 892, 895 (W.D. Va. 2001)). However, the Agreement explicitly reduces this problem by providing that the Defendant will pay upon written request "any fees or advance administrative expenses that the arbitration firm requires you to pay as a condition of your filing a Claim with the firm." Dkt. 1-3 at 5, ¶ 5. Thus, initial arbitration fees are not a barrier between the Plaintiff and the vindication of her statutory rights.[6]

Therefore, this matter shall be decided through arbitration as "an arbitrator [has been rightfully given the] authority to arbitrate federal statutory rights" in this case. *Hayes*, 811 F.3d at 674.

### b. This case will be dismissed rather than stayed.

Because arbitration is appropriate for all claims sought by the Plaintiff, I must decide whether to dismiss or stay the current proceeding. The Fourth Circuit has not resolved the issue

---

[6] In addition, the arbitration agreement allows for either party "to ask a small claims court to decide a claim." Dkt. 1-3 at 4, ¶ 3 ("Small Claims Court Exception").

of whether a stay or dismissal is warranted when all issues presented in a lawsuit are subject to arbitration. The Fourth Circuit recently acknowledged that "[t]here may be some tension between our decision in *Hooters*—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented . . . are arbitrable." *Aggarao v. MOL Ship Mgmt. Co.,* 675 F.3d 355, 376 n.18 (4th Cir. 2012) (quoting *Hooters, Inc. v. Phillips,* 173 F.3d 933 (4th Cir.1999); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir.2001)).

Dismissal is appropriate here due to the fact that this case is directly analogous to *Choice Hotels*—"all of the issues presented . . . are arbitrable." *Choice Hotels Int'l, Inc.,* 252 F.3d at 709–10.[7]

## IV. Conclusion

As described above, Defendant's motion will be granted and this case will be dismissed. Jarry and Allied entered into a contract which contained a valid arbitration agreement that allows for an effective vindication of Jarry's rights in the arbitration forum. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637 (1985) ("so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function").

Entered this  29th  day of March, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[7] Furthermore, dismissal will allow the Plaintiff to seek an immediate appeal. If any issue arises at a later date, either party could file another lawsuit at that time.